Jeremy Pinson # 16267-064
_____
Name and Prisoner/Booking Number
USP Coleman-2
_____
Place of Confinement
PO Box 1034
_____
Mailing Address
Coleman FL 33521
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Jeremy Pinson
_____,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) United States of America,
_____
(Full Name of Defendant)

(2) Federal Bureau of Prisons,

(3) Barbara von Blanckensee,

(4) Darren Makwhorter,

Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 19-cv-401-RM
_____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

## A.   JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
    ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☑ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
    ☑ Other: Federal Tort Claims Act, 28 U.S.C. 2671-80

2.   Institution/city where violation occurred: USP Tucson, AZ

Revised 12/1/20                                    1

**550/555**

(5) Jeremy Ulrich

(6) Herbert Koger

(7) Garrett Merrell

## B.   DEFENDANTS

1.   Name of first Defendant: _United States of America_ . The first Defendant is employed
as: _U.S. Government_ at _USP Tucson_ .
             (Position and Title)                                    (Institution)

2.   Name of second Defendant: _Federal Bureau of Prisons_ The second Defendant is employed as:
as: _Federal Agency_ at _USP Tucson_ .
             (Position and Title)                                    (Institution)

3.   Name of third Defendant: _Barbara von Blanckensee_ . The third Defendant is employed
as: _Warden_ at _USP Tucson_ .
             (Position and Title)                                    (Institution)

4.   Name of fourth Defendant: _Darren McWhorter_ . The fourth Defendant is employed
as: _Captain_ at _USP Tucson_ .
             (Position and Title)                                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.   PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?   ☐ Yes   ☐ No

2.   If yes, how many lawsuits have you filed? _Hundreds_ .   Describe the previous lawsuits:

   a.   First prior lawsuit:
        1.   Parties: _Pinson_ v. _DOJ et al._
        2.   Court and case number: _19-cv-235-RM_
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

   b.   Second prior lawsuit:
        1.   Parties: _Pinson_ v. _USA_
        2.   Court and case number: _20-cv-00070-RM_
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

   c.   Third prior lawsuit:
        1.   Parties: _Pinson_ v. _USA_
        2.   Court and case number: _19-cv-422-RM_
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

(Plaintiff does not have all of her legal files or access to )
(the internet to provide a 2 complete listing that's accurate)

Page 2-A, Continued from P. 2:

(5) Fifth Defendant: Jeremy Ulrich was employed as a SHU Lieutenant at USP Tucson.

(6) Sixth Defendant: Herbert Kager was employed as an Associate Warden at USP Tucson.

(7) Seventh Defendant: Garrett Merrell was employed as an SHU Lieutenant at USP Tucson.

2-A

**D.   CAUSE OF ACTION**

**COUNT I**

1.   State the constitutional or other federal civil right that was violated: 8ᵗʰ Amendment and FTCA 28 U.S.C. 2671-80 (Mental Health)

2.   **Count I.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
☐ Basic necessities          ☐ Mail          ☐ Access to the court          ☒ Medical care/Mental
☐ Disciplinary proceedings   ☐ Property      ☐ Exercise of religion         ☐ Retaliation  Health
☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count I.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

The plaintiff has a significant history of Mental health diagnoses, self-harm resulting in repeated emergency hospitalizations and surgeries, and multiple suicide attempts, that have been the subject of numerous lawsuits (See e.g. District of Colorado Case No. 12-cv-1570-RPM) and international publicity as well as Senate testimony by the BOP Director himself. It is well documented in BOP files by BOP psychologists that housing plaintiff in Segregation is detrimental to her mental health.
On two occasions — June 13, 2019 and Jan. 17, 2020 — plaintiff was placed into the USP Tucson Special Housing Unit for stays of several months against the clinical recommendations of her treating psychologist and Chief of Psychology at USP Tucson, Dr. Samantha Licata and James Hayden.
Generally, it has long been known that housing inmates with Mental health issues in Segregation is harmful to, destructive to, their Mental and emotional wellbeing. This is both in the Courts, See
(Continued on next page)

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____

5.   **Administrative Remedies:**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Count I?   ☒ Yes   ☐ No
   c.   Did you appeal your request for relief on Count I to the highest level?   ☒ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____

(See Attachments A, B, C)

3

e.g., Coleman v. Wilson 912 F.Supp. 1282 (E.D.Cal. 1995)(inappropriate disciplinary treatment and placement in segregation units of prisoners with mental illness was unconstitutional), the mental health profession in multiple studies, the BOP itself in 2013-14 commissioned an independent study that found multiple and serious policies or practices relating to mental/health and the use of segregation in BOP facilities.

From June 13, 2019 until Oct. 23, 2019 plaintiff was kept in the USP Tucson SHU and was released as part of a negotiated settlement of Pinson v. United States, Case No. 18-cv-118 (M.D.Pa.). During that time plaintiff engaged in multiple acts of self-harm involving razor blades.

On Jan. 17, 2020, following being assaulted, plaintiff was returned to the USP Tucson SHU. Inmates in SHU are prohibited from receiving or possessing razors. Despite this, USP Tucson SHU staff repeatedly allowed plaintiff to receive and possess razors. On multiple occasions, as listed

Page 3-A

Count I, Facts

hereafter, plaintiff sustained injuries as a result of her use of prohibited razors to harm herself:

1. On Dec. 10, 2019 the BOP was presented with an SF-95 Tort Claim which it assigned Administrative Claim No. TRT-WXR-2020-01803 challenging the reduction of Plaintiff's mental health care level at a time plaintiff's mental and emotional crises were increasing in severity, frequency, including but not limited to increased anxiety, depression, self-harm and suicidal ideation.

2. After being placed in SHU, on or about 7-21-20 plaintiff was given a razor by USP Tucson Officer Shields, which plaintiff thereafter showed Officer Wade threatening to commit suicide. Wade threatened plaintiff, encouraged her to commit suicide, and left her unsupervised in her SHU cell. Plaintiff lacerated her body with the razor, losing large amounts of blood which pooled outside her cell and onto the tier in sight of a dozen inmates. Wade summoned no psychological or medical attention for plaintiff.

3. On Sept. 14, 2020 after once again being given a razor the plaintiff cut herself 243 times on her arms, legs and neck, face, and officers were aware of the cuts as they were being made as they looked into her cell as she was doing so, but did nothing to stop her, or to summon a psychologist or medical provider to examine her.

3-B

**COUNT II**

1. State the constitutional or other federal civil right that was violated: _Violation of the FTCA, 28 U.S.C. 2671-80_

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☑ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   While in the USP Tucson SHU, staff refused and failed to supply (1) shower shoes, (2) safety mats, (3) extra towels for prisoners required to step out of showers, with wet feet, in SHU cells approximately 9-12 inches above a smooth concrete floor. On Sept. 6, 2020 plaintiff lost her traction upon the floor when stepping out of the shower, fell and struck her head, and back, upon the desk and floor resulting in an injury to her neck and spine causing her severe pain. When the fall was reported to SHU staff they declined to summon medical assistance. The plaintiff sought medical attention via "sick call" procedures 3 times, sought relief via "Informal Resolution" (See Att. D hereto) was informed by the USP Tucson Asst. Health Services Administrator she would "be evaluated" 6 weeks after the injury (Att. D at 2) but was never evaluated or treated for this injury while housed at USP Tucson until her departure in Dec. 2020.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Severe pain, limited mobility, emotional distress

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

   (See Attachment E)

**COUNT III**

1. State the constitutional or other federal civil right that was violated: Violation of the 8th Amendment, 1st Amendment, 5th Amendment

2. **Count III.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☒ Other: All the above
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   While in the USP Tucson SHU plaintiff was subjected, from June 13, 2019 then until Oct-23, 2019 and again from Jan. 17, 2020 until Dec-7, 2020 to horrendous conditions. Defendants Blanckensee, McWhorter, Ulrich and Koger jointly set the conditions and practices in the USP Tucson SHU and were required by BOP's policies to review conditions under various processes under time frames ranging from daily, weekly and monthly including personal in person tours and visits, inspections of the SHU weekly. The plaintiff beginning in June 2019 complained to Blanckensee, Koger, Ulrich and McWhorter each time they passed plaintiff's cell, by written request, administrative remedies of the following conditions challenged herein:

   A- Laundry:
   At all times while housed in SHU at USP Tucson starting in June (Continued on 5-A)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Anxiety, Depression, Suicidal ideation and attempts, violation of Constitutional and Statutory rights, exacerbating gender dysphoria, weight loss, muscular atrophy, etc.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

Count III, Facts

2019, plaintiff was provided 1 panties, 1 bra, 1 pants, 1 T-Shirt, 1 sheet, 1 towel, which she was required to wear in SHU (or sleep with) and was not permitted any means to clean, launder, exchange or replace them. On 6-30-20 the plaintiff asked defendant Merrell - the SHU Supervisor- for clean laundry. He replied "there is no laundry" to plaintiff. Convinced clean laundry was an essential need during the Covid-19 pandemic plaintiff spoke to defendants Blanckensee, McWhorter, and filed complaints under the administrative remedy process but was given 2 extra sets of bras and panties, while continuing to receive 1-set of clean pants, shirt, sheet and towel per month for months.

B. Out of Cell Exercise/Time

From June 15, 2019 until Oct. 23, 2019, then again from Jun. 17, 2020 until Dec. 7, 2020 plaintiff received zero out of cell recreation, exercise or time outdoors but was instead, with rare exceptions, confined to her cell 24 hours per day, 7 days per week during the specified time period.

5-A

Count III, Facts:

## C. Dental Hygeine Needs:

From June 13, 2019 until Dec. 7, 2020 at all times in SHU, The plaintiff suffers from a painful, sensitivity, in her teeth which BOP dentists have indicated requires her to brush her teeth with a toothpaste containing medicinal properties called "Sensodyne". On 4-28-20 plaintiff was seen by the dentist who said he'd been told by Blanckensee, McWhorter not to provide SHU inmates with toothpaste or floss which are clinical needs for plaintiff. Plaintiff sought, through BOP's administrative remedy process, to buy or be supplied necessary items for her sensitive teeth but continued to be denied such by Segal, Blanckensee and McWhorter who ordered their SHU staff to prohibit purchase or possession of dental hygeine items (i.e., toothpaste) in SHU by inmates.

## D. Reading Materials

From June 13, 2019 until Dec. 7, 2020 defendant Blanckensee prohibited plaintiff while in the SHU from possession or receipt of any books, magazines, or newspapers — and provided plaintiff no access to the media whatsoever.

Page 5-B

<u>Count II, Facts:</u>

E. <u>Gender-Affirming Accommodations:</u>

    Plaintiff has been diagnosed with gender dysphoria for years and while in SHU from June 13, 2019 until Dec. 7, 2020 at USP Tucson (excluding Oct. 23, 2019 to Dec. 16, 2019 and Jan. 14, 2020 to Jan. 16, 2020) defendants Blanckensee, McWhorter, Merrell actively denied plaintiff clinically recommended, and necessary, gender affirming accommodations such as:

    (1) female clothing, (2) female hygeine items,

    (3) female makeup, (4) the means to remove facial hair,

    (5) the means to brush her long-hair.

Formally, again, in BOP's administrative remedy Program/Process, beginning 3-1-20, plaintiff began requesting these accommodations from medical, custody and psychology staff at USP Tucson who all indicated it was the decision of Blanckensee, McWhorter and Merrell to deny such accommodations despite clinical need for such under the WPATH Standards of Care. Even when Kerri Pistro on behalf of BOP's Transgender Executive Council on 10-10-2019 emailed Blanckensee directing her to provide plaintiff gender affirming accommodations, but instead, Blanckensee continued to deny them to plaintiff going so far on one occasion to tell plaintiff "Men don't need makeup, period."

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

1- An injunction requiring expungement of all false information from Bureau of Prisons files relating to plaintiff's confinement at USP Tucson following a determination at trial of all specific documents containing false information once findings of fact have been made on which documents are false or contain false information.

(continued on Page 14)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___5-24-2021___

DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

<u>Count IV</u>

1. Constitutional or other federal civil right violated: <u>Privacy Act, 5</u> <u>U.S.C. 552a</u>, <u>Affordable Case Act</u>, <u>Equal Protection Clause</u>

2. Count IV. Identify the issue involved. ☑ <u>Retaliation</u>

3. Supporting Facts: After placing plaintiff into the USP Tucson SHU on June 13, 2019 staff began a process of falsifying information in government — BOP — files to justify their acts of retaliation, including but not limited to:

A. 1. On June 13, 2019 Lt. Uhring, Lawson and Capt. McWhorter, employees at USP Tucson placed plaintiff into the USP Tucson SHU under "SIS Investigation" stating in the USP Tucson Lieutenant's Office that a "3rd party inmate" alleged plaintiff threatened a staff member or inmate. During that interview McWhorter stated "since you want to file all these lawsuits, now its my turn for payback". While escorting plaintiff to SHU, Uhring stated "I hate trannies" to which Lawson replied, "you and me both". Lawson added moments later, "I try to ship as many of these motherfuckers as I can".

2. On 6-17-19, less than 5 days after the investigation began an "Inmate Investigation Report" was written, titled "Case Number TCP-19-0177" which stated on page 1 of 4 that no staff or inmates were involved.

7

Court IV, Continued

On Page 2 of the Investigation Report, in a section titled "Summary" the report stated plaintiff "authored an email to the AW's regarding the inmates Medical treatment."

On Page 3 of the Investigation Report, the interviewer wrote plaintiff was "interviewed regarding the email she sent" that plaintiff "stated her Medication was taken away" and "Pinson stated she is upset that her Medication was taken, and she expressed this via the email system to the Associate Warden box."

3. On 6-27-19 defendants McWhorter and Koger signed, electronically, the "Investigative Report."

4. Inexplicably, a "Request For Transfer" from the USP Tucson Warden was written and submitted containing completely false statements, referencing but not including the June 17, 2019 investigative report, that plaintiff had stated she was going to Murder her treating psychologist and would "get away with it" because she was "off [her] Meds" even though all staff involved in writing, signing, and submitting the transfer request knew it was false, that it falsely attributed statements to plaintiff she never Made, and claimed the Investigative Report had concluded plaintiff Made death threats when the report clearly stated otherwise.

8

<u>Count IV</u>

B. 1. On June 14, 2019 Officer T. Schneider, a BOP Officer at USP Tucson authored a Materially false "incident report" (No. 3267508) stating that the plaintiff "slipped" out of her hand restraints on him. Schneider charged plaintiff with a Code 208 prohibited act under BOP Policy of "Interfering With A Security Device".

2. At a hearing on July 16, 2019 plaintiff furiously denied the charge and demanded the DHO review the video footage. Instead of doing so, the DHO claimed plaintiff stated "Im guilty" at her hearing and released the video for destruction, imposing an adjudication of guilty and imposing sanctions against her. Plaintiff <u>never</u> stated "Im guilty" at the hearing.

3. The disciplinary charge was vacated and expunged in December 2019.

4. Both the incident and DHO reports contained a materially false statement in BOP documents in agency files.

9

C. 1. On **July 12, 2019** Ricxi Makhimetas, brutally attacked, injured, and hospitalized plaintiff at Tucson Medical Center.

2. In the moments after the assault, Nurse J. Avilez performed "Injury Assessment" by examining plaintiff and Makhimetas. Avilez noted Pinson was severely injured and claimed Makhimetas attacked her. Avilez noted that Makhimetas was uninjured, admitted to attacking Pinson, and apologized for doing so to Avilez. He also admitted to correctional officers he attacked Pinson. The medical examination began at 9:28 pm and ended at          p.m.

3. Upon photographing Plaintiff, Lieutenant ~~domino~~ stated "I bet this is gonna be a lawsuit. Fuck." He turned from plaintiff to the SHU Officers and stated "go in my office, now." This occurred at 9:30 pm.

4. At 10:22 p.m. Officer Vasquez authored incident report falsely charging plaintiff with prohibited act 201 "Fighting With Another Person." Vasquez, at the time he wrote the report, knew it was falsely charging the plaintiff with misconduct never committed.

Complaint

5. At 10:27 pm Nurse Avilez began entering plaintiff's vital signs into her notes taken at that moment.

6. At 10:55 pm the USP Tucson "Lieutenant's Daily Log" for July 12, 2019 states in part "Called 911 for inmate Pinson # 16267-064 (SHU) for possible facial fractures." The next part of this entry states, "TFD arrived at 11:07 p.m. w/4, inmate Pinson # 16267-064 (SHU) out Emergency Med. Trip via Gov."

7. In the aftermath of an incident in a federal prison, staff are required to independently document what occurred in a "Memorandum". To ensure honesty and accuracy for the subsequent investigation of an incident staff are not allowed to help one another write such a "Memorandum" to prevent efforts to commit perjury, obstruct an investigation, or falsify details at the moment of the incident so later on investigators begin an investigation with truthful accounts of each staff members observations immediately following an incident.

8. Despite what is required, on July 12, 2019 the Officers involved wrote identical memorandums, verbatim word for word copies that could not plausibly have been written independently of one another.

11

Count IV

9. An example of the obvious attempt to copy one another's Memorandums is comparing the following excerpts of 2 of the Memorandums:

"We approached cell 140 and observed inmate Pinson, Jeremy #16267-064 and inmate (omitted) had injuries to the face consistent with a physical altercation. Both inmates were given verbal directives to submit to hand restraints, which they complied" (Attachment F, "Memo 1" hereinafter)(emphasis added).

"We approached cell 140 and noticed that inmate Pinson, Jeremy #16267-064 and inmate (omitted) had injuries to the face consistent with a physical altercation. Both inmates complied with verbal directives to submit to hand restraints, which they complied." (Attachment G, "Memo 2" hereinafter)(emphasis added)

Despite the superficial semantical differences distinguishing the two Memorandums, it is implausible that all Memos that night were independently written without influence or interferen. Regardless, they each falsely claim Makhimetas "had injuries to the face consistent with a physical altercation,

12

10. The timing of the false incident report, false memorandums, also reflected the officers attempt to conspire to paint plaintiff a "fighter" rather than a "Victim." While 911 was not called until 10:55 pm, officers were fabricating discipline charges and supporting memorandum's at 10:22 pm before calling 911 to which the Tucson Fire Department ("TFD" in the Lieutenants Daily Log for 7-12-2019) responded by 11:07 pm. This suggests Officers Knew Pinson was injured at 9:20 pm, but waited to dial 911 for 1 hour and 35 minutes while authoring their false, misleading incident report and memorandums.

11. Incident Report 3278487, written by Officer Vasquez falsely charging Pinson with "Fighting" was expunged on being heard by a Discipline Hearing Officer as it was false and completely contradicted by the evidence.

12. At other times, SHU staff continued to write false discipline charges against plaintiff after the July 12, 2019 report also. One such incident occurred on Sept. 16, 2020 when, 2 days after cutting herself 243 times, the SHU Lieutenant told plaintiff "Oh you want to cut yourself up and make me look bad? Lets see how you look when I charge you with rioting!" That day he charged plaintiff with 2 of the BOP's most serious offenses, Knowing they were false. On 9-9-20 the charges were adjudicated false (Attachment H).

Sec. C, Relief -

2. Damages in the amount of :

    A. $150,000 for the Sept. 14, 2020 FTCA Claim, against the United States.

    B. $150,000 for the Sept. 6, 2020 FTCA Claim, against the United States.

    C. $275,000 for the July 21, 2020 FTCA Claim, against the United States.

    D. $1,000,000 for Claim No. TRT-WXR-2020-01803 against the United States.

    E. $1,000,000 against defendants Blanckensee, McWhortes, Ulrich and Koger, Merrell,

3. Award plaintiff costs and fees of prosecuting this action.

14



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Western Regional Office_
_7338 Shoreline Drive_
_Stockton, California 95219_

*Case Level 3*
*MH*

December 11, 2019

Jeremy Pinson
#16267-064
United States Penitentiary
PO BOX 24550
Tucson, AZ 85734

RE:    Administrative Claim No. TRT-WXR-2020-01803 Received: December 10, 2019

Dear Mr. Pinson:

This is to acknowledge receipt of your Claim for Damage, Injury or Death (Standard Form 95) submitted to or forwarded to this office under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671, et seq.

In accordance with the applicable provisions of the statute, this agency has up to six months from the date received in which to make a final determination of your administrative claim for damages.  This time frame began on the date that your claim was received for filing and processing as noted above.

Based on the location of your allegations, the Western Regional Office Consolidated Legal Center will be handling your claim for investigation and response.  Please note all future correspondence and change of address should reference the administrative claim number and be directed to:

  Dominic Ayotte
  Deputy Regional Counsel
  Western Regional Office
  7338 Shoreline Drive
  Stockton, CA 95219

Sincerely,

DENNIS M. WONG
WESTERN REGIONAL COUNSEL

DMW/sc

**Attachment A**



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Consolidated Legal Center_
_Federal Correctional Institution_
_37900 N. 45th Avenue_
_Phoenix, Arizona 85086_

April 22, 2021

**VIA CERTIFIED MAIL**
7009 1680 0001 0675 9892

Jeremy Pinson
Register Number 16267-064
USP Coleman II
Post Office Box 1034
Coleman, Florida  33521

Re:  Administrative Claim No. TRT-WXR-2021-00080

Dear Jeremy Pinson:

This is in response to the administrative claim submitted to this office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq.  You seek $150,000.00, in compensation for alleged personal injury as a result of events occurring at the United States Penitentiary (USP), Tucson, Arizona, on September 14, 2020.

Investigation fails to disclose any evidence of negligence or other conduct for which the United States is liable.  You have failed to establish that you sustained a loss <u>or</u> personal injury as a result of staff negligence in this matter.

Accordingly, your claim is denied.  If you are not satisfied with this determination, you are afforded six months from the date of the mailing of this letter via certified mail, within which to bring suit in the appropriate United States District Court.

Sincerely,

Dennis M. Wong
Western Regional Counsel

Clay C. Cook
Supervisory Attorney

CCC/ee

cc:  Catricia Howard, Complex Warden, FCC Tucson

Attachment B

Declaration of Jeremy Pinson

I declare under penalty of perjury the following is true:

1. On or about 7-22-20 I mailed to the BOP Western Regional Counsel's Office a FTCA Claim on an SF-95 Claim For Damage, Injury or Death form.

2. The 7-22-20 FTCA SF-95 Claim concerned events at USP Tucson, involving personal injury, on or about 7-21-20.

Executed pursuant to 28 USC 1746 on 5-24-2021.

Jeremy Pinson

Attachment C

TCX 1330.18B
9/9/2019
Page 6

Attachment A

# INFORMAL RESOLUTION FORM

**INMATE:** You are advised that prior to receiving and filing a Request for Administrative Remedy ), you MUST attempt to informally resolve your complaint through your Correctional Counselor. Briefly complaint below and list what effort you have made to resolve your complaint informally. Also, please ....ames of staff contacted.

| ....ate Name: Pinson | Reg. No.: 16267-064 | Unit: D2 |
|---|---|---|

| Informal resolution form issued by Correctional Counselor on: (date) 9.20.2020 |
|---|

**INMATE'S COMMENTS:** (Inmate MUST FILL OUT items 1-4 and signature block)

1. Complaint: Turned in 3 sick calls on falling and hurting my back but noone saw me

2. Efforts made by inmate to informally resolve incident (Which staff members did you talk to and what did they say?) Spoke to Cringin

3. State what action you want staff to take to correct the situation: See a doctor

| Date returned to Correctional Counselor: 9.20.2020 |
|---|

| Inmate Signature: | Reg. No. 16267-064 | Date 9-20-20 |
|---|---|---|

**CORRECTIONAL COUNSELOR'S COMMENTS:**

Efforts made to informally resolve and staff contacted:            See attached.
a. *Discussed the complaint with (staff member) --- and he/she stated...*
b. *I further explained to the inmate that ...*
c. *But, the inmate insisted he wanted to file a BP-9 because...*

| Date informally resolved: 9.27.2020 | Signature: |
|---|---|

Informal Resolution was not accomplished for the following reason:
*After I personally explained that ..., he still insisted that he was wronged because...*

Unit Manager's review and Signature:
a. *Can this request be resolved at the Unit Level?*
b. *Steps taken to resolve (who was contacted, results of that contact – do not forward for lack of contact):*

E. Lara.
Unit Manager

Attachment D
1 of 2

Name. Pinson, Jeremy

Reg. No. 16267-064

Informal Resolution

RESPONSE                                    Date 9/25/2020


This is in response to your Informal Resolution received on
9/20/2020 regarding you turning in 3 sick calls from falling and
hurting your back and that no one has seen you for it.

A review of your records has determined that you already have a
pending sick call appointment scheduled for this concern. You
will be evaluated.



J. Alexander AHSA

FCC Tucson

Attachment D
2 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Consolidated Legal Center_
_Federal Correctional Institution_
_37900 N. 45th Avenue_
_Phoenix, Arizona 85086_

May 5, 2021

**VIA CERTIFIED MAIL**
7001 0320 0004 3582 6182

Jeremy Pinson
Register Number 16267-064
United States Penitentiary
Post Office Box 24550
Tucson, Arizona   85734

Re:   Administrative Claim No. TRT-WXR-2020-07320

Dear Jeremy Pinson:

This is in response to the administrative claim submitted to this office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq.   You seek $150,000.00, in compensation for alleged personal injury as a result of events occurring at the United States Penitentiary (USP), Tucson, Arizona, on September 6, 2020.

Investigation fails to disclose any evidence of negligence or other conduct for which the United States is liable.   You have failed to establish that you sustained a loss or personal injury as a result of staff negligence in this matter.

Accordingly, your claim is denied.   If you are not satisfied with this determination, you are afforded six months from the date of the mailing of this letter via certified mail, within which to bring suit in the appropriate United States District Court.

Sincerely,

Dennis M. Wong
Western Regional Counsel

Clay C. Cook
Supervisory Attorney

CCC/ee

cc:  Catricia Howard, Complex Warden, FCC Tucson

Attachment E



U.S. Department of Justice

Federal Bureau of Prisons

*FCC Tucson*

---

*Tucson, Arizona 85756*

July 12, 2019

**MEMORANDUM FOR FILE**

**FROM:**   (b)(6); (b)(7)(C)  Senior Officer  (b)(6); (b)(7)(C)

**SUBJECT:**   Unwitnessed physical altercation

On 7/12/19, at approximately 9:20 pm, while conducting rounds on Bravo range we approached cell 140 and observed inmate Pinson, Jeremy #16267-064 and Inmate (b)(6); (b)(7)(C) had injuries to the face consistent with a physical altercation. Both inmates were given verbal directives to submit to hand restraints, which they complied. Both inmates were escorted out of their cell and separated immediately for safety and security reasons. Medical was notified and a medical assessment was conducted on both inmates. No further incident.





**U.S. Department of Justice**

**Federal Bureau of Prisons**

*FCC Tucson*

Tucson, Arizona 85756

July 12, 2019

MEMORANDUM FOR FILE

FROM:     [ (b)(6); (b)(7)(C) ] Senior Officer          [ (b)(6); (b)(7)(C) ]

SUBJECT:     Unwitnessed physical altercation

On 7/12/19, at approximately 9:20 pm, while conducting rounds in
Bravo range we approached cell 140 and noticed that inmate Pinson,
Jeremy #16267-064 and inmate [ (b)(6); (b)(7)(C) ] had
injuries to the face consistent with a physical altercation. Both
inmates complied with verbal directives to submit to hand
restraints, which they complied. I then assisted in escorting
Inmate M[ (b)(6); (b)(7)(C) ] out of the cell to a different
holding cell to get medically evaluated. No further incident.



**U.S. DEPARTMENT OF JUSTICE**          EXPUNGED          **FEDERAL BUREAU PRISONS**

| Institution: USP Tucson | Incident Report number: 3425214 | |
|---|---|---|
| NAME OF INMATE: PINSON, JEREMY | REG. NO.: 16267-064 | UNIT: D |
| Date of Incident Report: 08-16-2020 | Offense Code: 106 212 | |

Date of Incident: 08-16-2020

Summary of Charges: ENCOURAGING OTHERS TO RIOT/ ENGAGING IN GROUP DEMONSTRATION.

I.      NOTICE OF CHARGE(S)

II.     STAFF REPRESENTATIVE

III.    PRESENTATION OF EVIDENCE

IV.     FINDINGS OF THE DHO

_____ A. The act was committed as charged.    \_\_X\_\_ C. No prohibited act was committed: Expunge according to Inmate Discipline PS.

_____ B. The following act was committed:

V.      SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.):

**CONCLUSION AND FINDINGS:** NOT SUFFICIENT EVIDENCE TO SUPPORT SECTION 11.

VI.     SANCTION OR ACTION TAKEN (List each prohibited act with respective sanctions for that act):

VII.    REASON FOR EACH SANCTION OR ACTION TAKEN:

I. APPEAL RIGHTS: \_\_X\_\_ The inmate has been advised of the findings, specific evidence relied on action and reasons for the action. The inmate has been advised of the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

IX.    Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| A. ESTRADA | | 9-9-2020 |

DHO report delivered to Inmate by:

*B. Nicholson*
Printed Name (Staff)          Signature: _____          SEP 1 4 2020 /0800
                                                            Date and Time:

Prescribed by P5270                    Replaces BP-A0304 of AUG 11


Attachment H

i