**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-19-00401-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court are several Motions filed by Plaintiff: (1) First Motion for Writ of Habeas Corpus Ad Testificandum (Doc. 69); (2) Second Motion for Writ of Habeas Corpus (Doc. 76); (3) Motion to Appoint Neutral Expert Witness (Doc. 77); (4) Motion for Order to Clarify (Doc. 80); (5) Motion for Order to Resolve Dispute (Doc. 82); and (6) Renewed Motion to Appoint Counsel (Doc. 83).

**I.    Background**

Plaintiff filed a First Amended Complaint ("FAC") alleging four counts of constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, based on events that occurred while she was confined in the United States Penitentiary ("USP")-Tucson. (Doc. 21.)[1] On screening, the Court determined that Plaintiff

---

[1] Plaintiff is currently incarcerated at USP-Tucson and is serving an aggregate 252-month term of imprisonment for various crimes including Mailing Threatening Communications, Threat to a Juror, and Threats Against the President. (Doc. 47 at 1.)

stated an FTCA claim in Count One against the United States and dismissed the remaining claims and Defendants. (Doc. 20.) The Court then denied Defendant's Motion to Dismiss with respect to Plaintiff's FTCA claim based on her injuries allegedly suffered due to staff negligence in giving her razors while she was confined in the Special Housing Unit ("SHU") in June and September 2020. (Doc. 45 at 6-7.)

The Court subsequently granted Defendant's Motion for Summary Judgment to the extent Plaintiff's FTCA claim was based on alleged injuries on June 21, 2020, but denied summary judgment with respect to the allegation that Officer Vasquez gave Plaintiff a razor on or before September 14, 2020. (Doc. 54.) The Court found that questions of fact exist as to whether Officer Vasquez breached his duty of care to Plaintiff by giving her an envelope containing a razor, and whether this breach was the but-for and proximate cause of Plaintiff's self-inflicted injuries. (*Id.* at 10-13; Doc. 73.) Thus, the issues remaining for trial are whether Officer Vasquez gave Plaintiff an envelope that he knew contained a razor on or before September 14, 2020, whether Office Vasquez breached his duty of care to Plaintiff by doing so, whether there is a causal connection between Officer Vasquez's conduct and Plaintiff's self-injury, and whether Plaintiff's damages, if any, were the result of Officer Vasquez's conduct. (Docs. 54, 73.) The parties have submitted their Joint Proposed Pretrial Order and have stipulated to a bench trial. (Doc. 70.)

**II.     First and Second Motions for Writ of Habeas Corpus Ad Testificandum**

In her First and Second Motions for Writ of Habeas Corpus, Plaintiff asks the Court to issue writs of habeas corpus ad testificandum to secure her presence and the presence of her witnesses at trial. (Docs. 69, 76.)[2] Specifically, Plaintiff asks that Dr. Samantha Licata, Dr. James Hayden, Nurse J. Avilez, and inmates August Goodbird, Coty Waters, Jimmy Malone, Rene Ellis, Shaundelle Dial, and Ronnie Bostick be required to testify in person. (Doc. 69 at 1.) Plaintiff argues that the testimony of these witnesses is relevant and critical to establishing that Officer Vasquez gave Plaintiff a razor and knew Plaintiff would harm herself with it. (Doc. 69 at 1, 5-6; Doc. 76 at 1-3.) Plaintiff recognizes that a prisoner has

---

[2] Plaintiff also requests the appointment of counsel in her First Motion for Writ of Habeas Corpus. (Doc. 69.) That request is addressed *infra* in Section VI.

- 2 -

no constitutional right to appear personally at a trial in a civil suit, but she argues that the Court should issue a writ to secure her physical presence in order to ensure a fair trial. (Doc. 69 at 1-3; Doc. 76 at 1, 6-8.) Plaintiff avers that she has been transported from prison multiple times without incident and that the same is true for many if not all of her witnesses. (Doc. 76 at 3-4.)[3]

In response to the Motions, Defendant argues that Plaintiff has not established why a writ should issue as to her and her inmate witnesses when videoconferencing would raise fewer security concerns and be less expensive. (Doc. 75 at 6-8; Doc. 78.)[4] Defendant argues that Plaintiff's physical presence at trial is not necessary because videoconferencing would allow the trier of fact to view Plaintiff and assess her credibility. (Doc. 75 at 7; Doc. 78 at 9.) Defendant avers that Plaintiff is a maximum custody inmate whose transportation to the courthouse for trial would cost $9,151 and would require the presence of four USP-Tucson correctional officers and one Lieutenant. (Doc. 75 at 6; Doc. 78 at 7-8.) Defendant contends that staying trial until Plaintiff's release is impracticable because Plaintiff is not scheduled to be released until October 2026. (Doc. 75 at 7; Doc. 78 at 9.)[5] Defendant further argues that Plaintiff has not shown that the testimony of her inmate witnesses would substantially further resolution of this case, that none of the witnesses are located at USP-Tucson, and that some of the witnesses are designated to high security United States penitentiaries. (Doc. 75 at 7; Doc. 78 at 10.)

**A. Legal Standard**

"[I]mprisonment suspends [a] plaintiff's usual right to be personally present at judicial proceedings brought by himself or on his behalf." *Hernandez v. Whiting*, 881 F.2d 768, 770 (9th Cir. 1989). However, a district court has "power to issue a writ of habeas

---

[3] In addition to requesting writs of habeas corpus ad testificandum, Plaintiff asks the Court to direct the United States Marshal to advance witness fees, as she is unable to tender the fees. (Doc. 69 at 4-5.) The Court finds this request premature and does not address it at this time. Plaintiff may re-raise this issue when she files motions to subpoena trial witnesses pursuant to General Order 18-19.
[4] Defendant also notes that a writ of habeas corpus ad testificandum does not apply to witnesses who are Bureau of Prisons employees rather than inmates. (Doc. 75 at 8.)
[5] Defendant's brief contains a typo stating that Plaintiff's release date is in October 2006. The supporting exhibits indicate that Plaintiff's projected release date is in October 2026. (Doc. 75-1 at 9.)

corpus ad testificandum to secure the testimony of a [] prisoner witness." *Wiggins v. Alameda Cnty.*, 717 F.2d 466, 468 n.1 (9th Cir. 1983) (per curiam) (citing *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977)); *see also* 28 U.S.C. § 2241(c)(5). In determining whether to issue a writ of habeas corpus ad testificandum to secure a prisoner's physical presence at trial, district courts consider (1) "whether the prisoner's presence will substantially further the resolution of the case"; (2) "the security risks presented by the prisoner's presence"; (3) "the expense of the prisoner's transportation and safekeeping"; and (4) "whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Id.* (quoting *Ballard*, 557 F.2d at 480). The focus of the inquiry is "the need for the prisoner's testimony vis-à-vis the difficulties attendant to securing it." *Ballard*, 557 F.2d at 481.

When a case turns largely on credibility assessments, a district court cannot exclude a plaintiff from trial without weighing the "the practical concerns of safety and expense" against the necessity of making credibility assessments. *Latiolas v. Whitley*, 93 F.3d 205, 208 (5th Cir. 1996) (finding district court erred in conducting trial entirely on deposition testimony without considering the need to make credibility assessments). Videoconferencing may impede a fact-finder's ability to observe demeanor and assess credibility. *Montes v. Rafalowski*, No. C 09-0976 RMW, 2012 WL 2395273, at *2 (N.D. Cal. June 25, 2012). Nevertheless, if the security concerns and expense associated with transporting an inmate plaintiff to the courthouse "weigh heavily against issuing a writ of habeas corpus ad testificandum," videoconferencing offers a viable alternative that may facilitate the plaintiff's meaningful participation at trial. *Id.*; *see also Perotti v. Quinones*, 790 F.3d 712, 715 (7th Cir. 2015) (videoconferencing facilitates an incarcerated plaintiff's ability to "testify, present evidence, confront witnesses and address the jury"); *Velasquez v. City of Santa Clara*, No. 5:11-CV-03588-PSG, 2013 WL 6320849, at *5 (N.D. Cal. Dec. 4, 2013) (finding inmate witness's "participation through video conference would alleviate significant expense and security risks without unfairly prejudicing [him] by denying the jury the adequate opportunity to judge his credibility").

**B. Discussion**

Having considered the *Ballard* factors and the parties' respective positions, the Court will grant Plaintiff's Writ of Habeas Corpus Ad Testificandum as to her and will deny it without prejudice as to her inmate witnesses. The Court will also deny Plaintiff's Motions to the extent they seek a writ of habeas corpus ad testificandum to secure the presence of non-inmate witnesses, as such a writ is inapplicable to non-inmate witnesses.

Although Plaintiff has no right to be physically present at trial, the Court finds that Plaintiff's physical presence will substantially further resolution of the case by allowing the Court to assess Plaintiff's credibility and by facilitating Plaintiff's presentation of evidence, testimony, and arguments. The Court has considered the potential security risks and the approximate $9,000 cost of transporting Plaintiff to the courthouse for trial and does not find that these factors outweigh the need for Plaintiff's in-person presence and testimony. Staying this action is impracticable as Plaintiff is not due to be released until 2026, and a three-year stay would prejudice her claim. Accordingly, the *Ballard* factors weigh in favor of granting a writ of habeas corpus ad testificandum to secure Plaintiff's physical presence at trial.

However, the Court is not persuaded at this time that the *Ballard* factors justify requiring the physical presence of Plaintiff's inmate witnesses at trial. First, Plaintiff has not shown that the testimony of the inmate witnesses is so crucial to resolution of this case that their physical presence is necessary to allow the Court to make appropriate evidentiary determinations. Videoconference appearances will allow the Court to view the witnesses, hear their voices, and evaluate their testimony. There is no technological barrier to any witnesses appearing via videoconference, as both the Court and the federal prisons have the appropriate technology and are well-versed in its use.

The remainder of the *Ballard* factors also appear to weigh against issuing a writ of habeas corpus ad testificandum as to Plaintiff's inmate witnesses. Although the security level of each inmate is unknown, it appears that at least some of the inmate witnesses are in maximum security custody. Furthermore, Defendant avers that none of the inmate

1   witnesses are located in Tucson, and thus their transportation would involve additional
2   security risks and expense.
3       The Court will deny Plaintiff's Motions without prejudice as to the inmate
4   witnesses. After the pretrial conference and the resolution of motions in limine, Plaintiff
5   may renew her request for writs of habeas corpus ad testificandum as to specific inmate
6   witnesses, if new information arises regarding the necessity of the inmate witnesses'
7   physical presence or the security risks and expense associated with transporting the
8   witnesses.

### III.    Motion to Appoint Neutral Expert Witness

Plaintiff's Motion to Appoint Neutral Expert Witness seeks an Order appointing a neutral expert witness at trial pursuant to Federal Rule of Evidence 706. Plaintiff seeks the appointment of an expert witness to testify regarding "the impact of the SHU and solitary confinement on her state of mind on September 14, 2020." (Doc. 77.) Plaintiff avers that she has spent approximately one-third of her life in segregated housing or solitary confinement, and that these experiences have profoundly impacted her mental health. (*Id*.) Plaintiff avers that other courts have introduced expert testimony to show the psychological effects on prisoners of confinement and mistreatment by prison staff. (*Id*.) Plaintiff argues that an expert should be appointed to opine on how her confinement in segregation impacted her mental state when she engaged in self-harm on September 14, 2020, and how it continues to impact her. (*Id*.)

Defendant responded in opposition to the Motion. (Doc. 79.) Defendant notes that neither party has disclosed an expert witness, neither party listed any expert witnesses in the Joint Proposed Pretrial Order, and both parties listed Plaintiff's treating psychologist, Dr. Samantha Licata, as a fact witness. (*Id*. at 3, 6.) Defendant argues that this case does not involve complex, scientific, or technical issues, and does not present circumstances necessitating the appointment of an expert. (*Id*. at 6.) Defendant avers that Dr. Licata evaluated Plaintiff on September 14 and 15, 2020, the psychology records from those dates

are listed as trial exhibits, and both Dr. Licata and Plaintiff can testify regarding Plaintiff's state of mind on those dates. (*Id.*)

### A. Legal Standard

Federal Rule of Evidence 702(a) authorizes "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Rule 706(a) allows a court to appoint an expert witness.

Rule 706(a) "only allows a court to appoint a neutral expert." *Gorton v. Todd*, 793 F.Supp.2d 1171, 1178 (E.D. Cal. 2011). It "does not contemplate the appointment of, and compensation for, an expert to aid one of the parties." *Hollis v. Sloan*, No. 2:08-CV-2674, 2010 WL 4069336, at *1 (E.D. Cal. Oct. 18, 2010). "[T]he principal purpose of a court-appointed expert is to assist the trier of fact, not to serve as an advocate." *Id*.

A court may consider the "complexity of the evidence" and "the court's need for an impartial viewpoint" in deciding whether to appoint a neutral expert witness. *Womack v. GEO Grp., Inc.*, No. CV-12-1524-PHX-SRB, 2013 WL 2422691, at *2 (D. Ariz. June 3, 2013). Appointment of an expert pursuant to Rule 706 is rare and is usually done only when compelling circumstances are present. *Id*. at *3. Appointment of a neutral expert witness is not necessary in cases that do "not involve complex scientific evidence or complex issues." *Skylstad v. Reynolds*, 248 F. App'x 808, 810 (9th Cir. 2007); *see also Berg v. Prison Health Servs.*, 376 F. App'x 723, 724 (9th Cir. 2010) (holding that district court did not abuse its discretion in denying motion for appointment of an independent expert because the "action was not a medical malpractice claim and did not involve technical evidence or complex issues").

### B. Discussion

Appointment of a neutral expert witness under Rule 706 is neither necessary nor justified in this matter. The issue on which Plaintiff requests a neutral expert—the effect of solitary confinement and segregation on her mental health—may be relevant to

1   Plaintiff's choice to harm herself with a razor, but it is not directly relevant to any actions
2   or omissions of Officer Vasquez and their effect on Plaintiff. Furthermore, both Plaintiff
3   and Dr. Licata can, and presumably will, testify regarding Plaintiff's state of mind when
4   she harmed herself with a razor on September 14, 2020. Thus, Plaintiff has not articulated
5   a need for an expert witness to illuminate or explain any issue that is outside the scope of
6   the expected testimony. There are no complex scientific or technical issues in this case on
7   which the Court would benefit from hearing testimony from a neutral expert. Accordingly,
8   the Motion will be denied.

9   **IV.    Motion for Order to Clarify**

10   Plaintiff moves for an Order directing Defendant to clarify certain statements in its
11   Response to the Second Motion for Writ of Habeas Corpus Ad Testificandum. (Doc. 80;
12   *see also* Doc. 78.) Plaintiff asks for clarification on Defendant's statement that "Plaintiff
13   poses a danger to staff" and "the community." (Doc. 80.) Plaintiff asks the Court to order
14   Defendant to identify the names of the staff members to whom Plaintiff poses a danger, the
15   reason why she poses a danger, and the details of the "danger" that are "real, specific, and
16   based in present time and place." (*Id*.) Plaintiff also asks for clarification on Defendant's
17   statement regarding her "purported non-monetary settlement offer" and why Defendant
18   characterized the offer as "purported" or "improper." (*Id*.)

19   Defendant opposes the Motion, arguing that it does not comport with the Federal
20   Rules of Civil Procedure or Rules of Evidence and does not show that Plaintiff is entitled
21   to any relief. (Doc. 81 at 6.) Defendant avers that its statements regarding the danger
22   Plaintiff poses to staff and the community were based on Plaintiff's maximum-custody
23   status and Bureau of Prisons policy that inmate transportation procedures "be followed
24   based on the custody level of the inmate." (*Id*. at 6-7.) Defendant further states that
25   Plaintiff's request for additional discussion or explanation of the parties' settlement
26   negotiations would violate Federal Rule of Evidence 408, which prohibits evidence of
27   settlement offers and negotiations. (*Id*. at 7.) Defendant further states that Plaintiff's
28

settlement offer in this case shares the same defect as Plaintiff's rejected settlement offer in *Pinson v. Estrada*, No. 4:18-cv-00535. (*Id.*)

The Court finds no basis on which to grant the Motion for Order to Clarify. Plaintiff has not identified a specific issue requiring clarification at this time, nor has she identified a reason why such clarification would be necessary. Furthermore, Defendant has adequately explained its statements regarding the danger posed by Plaintiff and the settlement offer. The Motion will be denied.

### V. Motion for Order to Resolve Dispute

In this Motion, Plaintiff "seeks a determination by the Court" as to whether her settlement offer to Defendant was "improper" and, if it was not, an order that defense counsel "retract her accusations" of the offer's impropriety. (Doc. 82.) Defendant argues that Plaintiff's Motion does not show an entitlement to any relief, violates Federal Rule of Evidence 408, and mischaracterizes the parties' settlement negotiations. (Doc. 84.)

The parties previously engaged in a settlement conference before Magistrate Judge Leslie A. Bowman and did not reach a settlement. (Doc. 62.) There is no live issue or dispute regarding the content or nature of Plaintiff's previous settlement offer. The fact that Plaintiff does not like defense counsel's characterization of the offer as "improper" does not present a dispute for this Court to resolve. Plaintiff's Motion will be denied.

### VI. Requests for Appointment of Counsel

Plaintiff's First Motion for Writ of Habeas Corpus contains a request for the appointment of counsel. (Doc. 69 at 3-4.) Plaintiff also filed a Renewed Motion to Appoint Counsel. (Doc. 83.) Plaintiff argues that counsel will assist her in litigating this case if she does not appear in-person at trial by, for example, ensuring that witnesses appear. (Doc. 69 at 3-4.) She also argues that exceptional circumstances meriting the appointment of counsel are present based on her likelihood of success on the merits of the case and her ability to articulate her claims pro se. (*Id.*; Doc. 83.) Defendant responds that Plaintiff has not demonstrated a need for counsel different from that of any other pro se litigant, that she is

experienced in litigating in federal court, and that she clearly understands the legal standard and defense in this simple negligence action. (Doc. 75 at 10; Doc. 85 at 4-6.)

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982); *see also Hernandez*, 881 F.2d at 770 (an incarcerated civil litigant has no constitutional entitlement to court-ordered counsel unless her case carries the risk of affecting her physical liberty). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate her claims pro se in light of the complexity of the legal issue involved. *Id*. "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id*. (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

The Court addressed Plaintiff's request for trial counsel in a prior Order. (Doc. 66.) The Court again finds that there are no exceptional circumstances warranting the appointment of counsel in this case. Plaintiff has demonstrated an ability to research and make legal arguments and to timely litigate issues as they arise. The Court has already determined that the issues in this case are not complex. Plaintiff's presence in the SHU does not on its own justify the appointment of counsel, especially given Plaintiff's demonstrated ability to litigate her case. Because no exceptional circumstances warrant the appointment of counsel, Plaintiff's requests for the appointment of counsel will be denied.

Accordingly,

**IT IS ORDERED**:

(1) Plaintiff's First Motion for Writ of Habeas Corpus Ad Testificandum (Doc. 69) and Second Motion for Writ of Habeas Corpus (Doc. 76) are **granted in part and denied in part**. Plaintiff's request to appear in-person for the bench

trial is **granted**. Plaintiff's request for her inmate witnesses to appear in-person for the bench trial is **denied without prejudice**. Inmate witnesses may appear via videoconference.

(2) Plaintiff's Motion to Appoint Neutral Expert Witness (Doc. 77) is **denied**.

(3) Plaintiff's Motion for Order to Clarify (Doc. 80) is **denied**.

(4) Plaintiff's Motion for Order to Resolve Dispute (Doc. 82) is **denied**.

(5) Plaintiff's Renewed Motion to Appoint Counsel (Doc. 83) is **denied**.

Dated this 21st day of April, 2023.

_____
Honorable Rosemary Márquez
United States District Judge