**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-19-00401-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court are four Motions in Limine: Plaintiff's Motions in Limine and *Daubert* (Doc. 93), to which Defendant responded (Doc. 100); Defendant's Motion in Limine No. 1: Lay Witness Testimony (Doc. 90), to which Plaintiff responded (Doc. 96); Defendant's Motion in Limine No. 2: Hearsay (Doc. 91), to which Plaintiff responded (Doc. 97); and Defendant's Motion in Limine No. 3: Relevance (Doc. 92), to which Plaintiff responded (Doc. 98). The parties presented argument to the Court regarding the Motions in Limine on June 6, 2023. (Doc. 103.)

Also pending are Plaintiff's Motion for Order or Temporary Restraining Order ("TRO") Until Trial (Doc. 94), to which Defendant responded (Doc. 101); Plaintiff's Motion for Reconsideration of Order in Part (Doc. 95), to which Defendant did not respond; Plaintiff's Renewed Motion to Appoint Counsel (Doc. 99), to which Defendant did not respond; Plaintiff's Motion for Order Regarding Access to the Courts (Doc. 105), to which Defendant responded (Doc. 106), and Plaintiff replied (Doc. 108); and Plaintiff's Motion to Take Judicial Notice (Doc. 109), to which Defendant has yet to respond. Finally,

Defendant has filed a first Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law and Notice to Court Reporter. (Doc. 113.) The Court will resolve the Motions as follows.

**I.    Background**

Plaintiff filed a First Amended Complaint ("FAC") alleging four counts of constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, based on events that occurred while she was confined in the United States Penitentiary ("USP")-Tucson. (Doc. 21.)[1] The Court directed the United States to respond to Plaintiff's FTCA claim within Count One. (Doc. 20.) Plaintiff alleges that Officer Vasquez took a manilla envelope from another inmate, examined and removed some of its contents, then handed the envelope to Plaintiff. (Doc. 47-3 at 16, 20.) She alleges that the envelope contained coffee, postage stamps, and "an entirely intact new dark green Bic double-bladed razor." (Doc. 47-3 at 20-21, 23.) Plaintiff further alleges that, on September 14, 2020, she "cut herself 243 times" on her arms, legs, neck, and face with the razor. (Doc. 21 at 7.)

The issues remaining for trial are: (1) whether Officer Vasquez gave Plaintiff an envelope that he knew contained a razor on or before September 14, 2020; (2) whether Office Vasquez breached his duty of care to Plaintiff by doing so; (3) whether there is a causal connection between Officer Vasquez's conduct and Plaintiff's self-injury; and (4) whether Plaintiff's damages, if any, were caused in whole or in part by Officer Vasquez's conduct. (Docs. 54, 73.) The parties stipulated to a bench trial (Doc. 70) that is scheduled for September 12-14, 2023 (Doc. 103).

**II.   Motions in Limine and *Daubert* Motion**

   **A.   Plaintiff's Motion in Limine and *Daubert* (Doc. 93)**

In her Motion in Limine and *Daubert*, Plaintiff seeks the exclusion of: (1) "any

---

[1] Plaintiff is currently incarcerated at USP-Tucson and is serving an aggregate 252-month term of imprisonment for various crimes, including Mailing Threatening Communications, False Statement, Threat to a Juror, and Threats Against the President. (Doc. 47 at 1.)

expert testimony by defense witness [Dr.] Samantha Licata…to the extent her testimony will be expert opinion" because "she was not disclosed as an expert during discovery;" (2) the "factually false or inaccurate portions" of her psychology records from September 14, 2020, and September 15, 2020, because "such evidence is categorically irrelevant, immaterial[,] and prejudicial;" (3) Plaintiff's "criminal convictions and prison disciplinary record as it is more prejudicial than probative;" (4) "any evidence of her character pursuant to Fed. R. Evid. 404(a);" (5) "evidence of prior lawsuits, except those reflecting acts of self-harm or mental health" because "evidence of litigiousness is a character trait that is not admissible;" and (6) evidence of her witnesses' "prior convictions," "character," and "disciplinary record[s]" because introduction of such evidence "is likely to intimidate" the witnesses.[2]  (Doc. 93 at 5-7.)

In response, Defendant argues that, as Plaintiff's treating physiologist, "Dr. Licata may testify without the disclosure of an expert witness report" under Fed. R. Civ. P. 26(a)(2).  (Doc. 100 at 2 (citing Doc. 70 at 507.).)  Next, Defendant argues Plaintiff's psychology records from September 14 and 15, 2020, are admissible because the parties identified them as such, and Plaintiff identified them as records she intends to offer. (*Id.* at 3 (citing Doc. 70 at 7.).)  Additionally, Defendant argues Plaintiff did not identify which portions of the records should be excluded, "nor how she proposes to demonstrate that they are false or inaccurate." (Doc. 100 at 3.)  As to character for truthfulness and evidence of other crimes, Defendant argues that such evidence is admissible as to Plaintiff and her witnesses under Federal Rule of Evidence 609.  (*Id.* at 3-4.)  Finally, Defendant argues that evidence of Plaintiff's prior lawsuits is admissible to show a common scheme or plan in disputes.  (*Id.* at 4.)

---

[2] Plaintiff also expresses concern about the Court's April 18, 2023 Order (Doc. 86), the Court's denial of her requests for the appointment of counsel, and her lack of access to the law library, telephone, email, and legal files. (Doc. 93.). Plaintiff also alleges that "several of [her] witnesses in Case No. 19-cv-00422-RM have expressed fear of retaliation if they testify in any of [Plaintiff's] civil proceedings because Warden Mark Gutierrez has threatened several of them with transfer to more dangerous prisons if they testify." (Doc. 93-1.)  The Court will not address these issues because they are not proper motions in limine nor *Daubert* motions.  The Court will also not address Plaintiff's discussions of a *Daubert* Motion (Doc. 93 at 4-5) because the parties did not disclose any expert witnesses. (*See* Doc. 70.)

The Court finds that, as Plaintiff's treating physician during the incidents at issue, Dr. Licata is permitted to testify as to opinions formed during the course of treatment without an expert report. This is in keeping with the Ninth Circuit's holding that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that [her] opinions were formed during the course of treatment." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011); s*ee also* Fed. R. Civ. P. 26(a)(2), Advisory Committee's Notes, 1993 amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.").

Next, the Court finds that Plaintiff's psychology records from September 14 and 15, 2020, are admissible without Plaintiff's requested redactions of "factually false or inaccurate portions." (Doc. 93 at 5.) As Defendant states, the parties agreed the records are "admissible in evidence," and Plaintiff identified them as records she expects to offer. (Doc. 70 at 7). Furthermore, Plaintiff did not explain which portions should be excluded or how she will establish that the records are "factually false or inaccurate." (*Id.*)

Next, the Court considers Plaintiff's request to exclude her and her witnesses' criminal convictions and character evidence. Federal Rule of Evidence 404(b)(1) provides that: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 609 specifies that when "attacking a witness's character for truthfulness by evidence of a criminal conviction," evidence of a crime punishable by death or imprisonment for more than one year "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). Furthermore, "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." Fed. R. Evid. 609(a)(2).[3]

Here, Plaintiff was convicted of False Statement, in violation of 18 U.S.C. § 876(c). (Doc. 47 at 1.) The Court concurs with Defendant that the conviction involving dishonesty

---

[3] Limits on admissibility apply if more than 10 years have passed since the witness's conviction or release from confinement. *See* Fed. R. Evid. 609(b).

1 or false statements is probative of Plaintiff's character for truthfulness and is admissible under Rule 609. Likewise, Plaintiff's witnesses' character for truthfulness may be attacked within the confines of the Federal Rules of Evidence. However, the Court agrees with Plaintiff that evidence of her prior lawsuits cannot be introduced merely to show litigiousness, and Defendant has not shown how such evidence would be relevant for a purpose permitted by Federal Rule of Evidence 404(b). Furthermore, Defendant has not established that Plaintiff's prison disciplinary convictions are admissible under Federal Rule of Evidence 609. If Defendant seeks to introduce evidence of Plaintiff's prison disciplinary convictions at trial, it must establish their relevance and admissibility under the Federal Rules of Evidence. Based on the foregoing, the Court will partially grant and partially deny Plaintiff's Motion in Limine and *Daubert* (Doc. 93).

**B.     Defendant's Motion in Limine No. 1: Lay Witness Testimony (Doc. 90)**

Under Rule 701 of the Federal Rules of Evidence, Defendant moves to preclude "Plaintiff from providing expert medical or psychological testimony." (Doc. 90 at 1.) Defendant avers that "[a]s a lay witness, Plaintiff may testify to what she experienced and relevant events." (*Id.*) However, Defendant requests that the Court preclude Plaintiff and her inmate witnesses from testifying as to the following matters that Defendant asserts require scientific, technical, or specialized knowledge:

> self-diagnosis; the symptoms, implications and effects of medical or psychological conditions; the adequacy of the course of treatment; the cause of medical or psychological conditions or those she alleges as her injuries; the effect of segregated housing on inmates; issues facing transgender inmates in cisgender prisons; or that the Bureau staff failed to adequately treat her long-standing mental health issues in segregated housing.

(*Id.* at 5-6.) Defendant further seeks to preclude Plaintiff's inmate witnesses from testifying that she "had obvious depression and suicidal thoughts, intent, plans, actions;" "had obvious suicidal plans;" or that she "was often seeking to self-harm." (*Id.* at 5.)

In response, Plaintiff notes that she "does not contest she may not offer a scientific, technical, or specialized knowledge under Rule of Evidence 701." (Doc 96 at 2.) However, she argues that she is permitted to offer testimony as to her experiences in the SHU,

including insomnia, feelings of sadness and hopelessness, and intentions of committing suicide. (*Id.*)  She further contends that a lay person is capable of knowing "when they feel depressed, anxious, nervous, suicidal, desperate, and need no expert opinion to know how they feel." (*Id.*).  Finally, she argues that inmates Goodbird, Waters, and Ellis are permitted to testify as to what they personally saw Plaintiff do in the cell with razors or what these individuals did with razors to themselves.  (*Id.* at 2-3.)

Rule 701 of the Federal Rules of Evidence limits lay witness testimony to opinions: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Under Rule 701, an expert witness is not required to establish that a plaintiff "experienced mental distress and depression for purposes of noneconomic damages." *January v. Dr Pepper Snapple Group, Inc.*, 594 Fed. Appx. 907, 910-11 (9th Cir. 2014); *Sienze v. Kutz*, No. 1:17-CV-0736 AWI SAB, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25, 2019) (plaintiff "may testify as to his direct perceptions of pain" and "his own mental perceptions").

Rule 701 does not permit a plaintiff to self-diagnose because this testimony involves scientific, technical, or specialized knowledge. *Sanchez v. Master Protec., LP*, No. CV 20-8472 PSG (RAOx), 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022).  Likewise, a plaintiff may not "testify as a lay witness regarding the causation of any specific diagnoses or condition." *Sanchez v. County of Graham*, CV-21-73-TUC-JCH, WL 3022467, at *3 (D. Ariz. Apr. 20, 2023).  However, a lay witness "may relay circumstantial facts to the jury that would support a finding of causation." *Lane v. Beach*, 1:20-cv-00147-JLT-GSA (PC), 2023 WL 5183685, at *2 (E.D. Cal. Aug. 11, 2023); *Boren v. Harrah's Ent. Inc.*, No. 2:08–cv–00215–GMN–LRL, 2010 WL 4340641, at *2 (D. Nev. Oct. 26, 2010) ("Just because a lay witness cannot testify about his opinion as to the causation of the emotional distress does not mean that a plaintiff cannot testify about the surrounding facts which prove a causal link between the alleged wrong and the alleged damage, even without an expert.").

1    Here, as allowed by Rule 701(a), Plaintiff may offer testimony that is "rationally
2  based on [her] perception" of: her general feelings, mental state, and pain, and how her
3  feelings and mental state change when she is in solitary confinement. *See Sanchez*, 2022
4  WL 2092995, at *2 (a plaintiff may testify "generally that [she] felt depressed, anxious, or
5  sleep deprived"). In other words, as Defendant states, "Plaintiff may testify as to what she
6  experienced." (Doc. 90 at 3.) Similarly, Plaintiff's witnesses may give testimony that is
7  "rationally based on the witness's perception" of Plaintiff's general mental state and
8  attempts to self-harm. Fed. R. Evid. 701(a). Such observations "result[] from a process of
9  reasoning familiar to everyday life." Fed. R. Evid. 701 Adv. Comm. Notes (2000).
10 However, the Court will not permit Plaintiff or her witnesses to testify regarding any
11 specific self-diagnoses or the causation of any diagnoses. Accordingly, the Court will
12 partially grant and partially deny Defendant's Motion in Limine No. 1: Lay Witness
13 Testimony (Doc. 90).

**C.     Defendant's Motion in Limine No. 2: Hearsay (Doc. 91)**

Under Federal Rules of Evidence 801 and 802, Defendant moves to preclude "Plaintiff from presenting out-of-court statements from Plaintiff and nonparties for the truth of the matter asserted." (Doc. 91 at 1.) Defendant specifically seeks to exclude:

1. Alleged oral statements by Plaintiff regarding her mental health and the causes of any mental health issues she may have;
2. Alleged oral statements by Plaintiff and nonparties concerning the quality of medical and psychological care in Bureau facilities;
3. Alleged oral statements by Plaintiff and nonparties regarding the source of razors in the SHU at USP Tucson;
4. Testimony by Plaintiff concerning medical providers' opinions or conclusions;
5. Testimony by Plaintiff concerning nonparties' conclusions regarding the effects of segregated housing on inmates' mental health; and
6. Medical records containing statements made by medical providers, including Dr. Hayden.

(*Id.* at 2-3.)

In response, Plaintiff admits "she is very confused by the Federal Rules of Evidence as to hearsay," but she argues that Dr. Hayden's recommendation that she be kept in the SHU as briefly as possible is relevant to proving the Bureau of Prison's negligence and is

- 7 -

therefore admissible. (Doc. 97.) Plaintiff contends that "Dr. Hayden will testify that he warned the very people responsible for keeping [Plaintiff] in the SHU of [Plaintiff's] lengthy history of self-harm in the SHU." (*Id.* at 3.) Plaintiff avers that she "does not seek to present testimony of what others said to her, nor what others heard. Only what [Plaintiff] said, and what they said, themselves." (*Id.* at 4.)

Hearsay is an out-of-court oral, written, or nonverbal assertion offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is generally inadmissible unless a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. Pursuant to Rules 801 and 802 of the Federal Rules of Evidence, the Court will grant Defendant's Motion in Limine No. 2: Hearsay (Doc. 91) to the extent the requested exclusions are hearsay and not subject to an exception. However, the Court notes that if Plaintiff seeks to introduce out-of-court statements for a purpose other than proving the truth of the matter asserted—for example, if she is seeking to introduce such statements to establish notice—then the statements are not inadmissible as hearsay. Furthermore, if Plaintiff seeks to introduce out-of-court statements made by Defendant's agents or employees about matters within the scope of that relationship, such statements are non-hearsay opposing party statements. *See* Fed. R. Evid. 801(d)(2). Finally, out-of-court statements are not inadmissible as hearsay if they fall under an exception set forth in Federal Rules of Evidence 803 or 804 or the residual exception of Rule 807.

### D.  Defendant's Motion in Limine No. 3: Relevance (Doc. 92)

Defendant moves to preclude "Plaintiff from presenting evidence which is irrelevant… would cause unfair prejudice, confuse the issues, cause undue delay, waste time and needlessly present cumulative evidence." (Doc. 92 at 1.) Specifically, Defendant seeks to preclude Plaintiff and her witnesses from testifying:

> about alleged incidents of self-harm regarding Plaintiff and other inmates other than the September 14, 2020, incident, other instances in which Officer Vasquez allegedly gave an inmate a razor, incidents in which Officer Vasquez allegedly encouraged an inmate to harm himself or herself and alleged incidents which occurred after September 14, 2020.

- 8 -

1  (*Id.* at 5.)  Defendant further argues that inmates Goodbird and Waters should be excluded from testifying that Officer Vasquez passed Plaintiff razors, inmate Dial should be excluded from testifying that Officer Vasquez supplied him materials to self-harm and encouraged him to kill himself, and inmate Bostick should be excluded from testifying that Officer Vasquez encouraged Plaintiff and other inmates to self-harm.  (*Id.* at 3-4.)  Plaintiff argues that the testimony is relevant and therefore admissible.  (Doc. 98.)

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Federal Rule of Evidence 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

This Court has previously reasoned that:

> Even though Plaintiff engaged in her own harmful conduct, which ultimately caused her injuries, this is not enough to break the causal chain of events going back to her obtaining the razor from Officer Vasquez because, as in the dram shop context, "the common law recognizes a duty to take affirmative measures to control or avoid increasing the danger from the conduct of others." *Ontiveros*, 667 P.2d at 208−09. Additionally, the Arizona Supreme Court has recognized that "the existence of an unreasonable risk of harm . . . becomes most obvious when the actor has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things." *Id.* (quoting W. Prosser, Handbook on the Law of Torts § 33, at 172 (4th ed. 1971)) (internal quotation marks omitted). On this basis, a reasonable jury could find it reasonably foreseeable to a correctional officer in Vasquez's position that passing along a razor to a prisoner in the SHU, where such items are prohibited, would create an unreasonable risk of harm.

(Doc. 54 at 12-13.)

In this case, incidents of self-harm by Plaintiff and other inmates, and instances of Officer Vasquez providing razors to inmates, are relevant to prove that Officer Vasquez reasonably foresaw that passing a razor to a prisoner in the SHU would create an unreasonable risk of harm.  The probative value of such testimony is not "substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid.

403. However, the allegations that Officer Vasquez specifically verbally encouraged inmates to "kill" themselves is substantially outweighed by a danger of unfair prejudice. Thus, the Court will grant Plaintiff's Motion in Limine No. 3: Relevance (Doc. 92) to the extent that it seeks to preclude testimony that Officer Vasquez told inmates to "kill" themselves. The Court will deny the Motion in all other respects.

### III. Plaintiff's Other Pending Motions

#### A. Plaintiff's Motion for Order or TRO Until Trial (Doc. 94)

Plaintiff seeks an order prohibiting her transfer from USP-Tucson without authorization by this Court before trial. (Doc. 94 at 3.) Additionally, Plaintiff requests an order requiring BOP to provide Plaintiff with access to the law library for at least two hours per week until trial, weekly access to legal files, and live-monitored phone access to her inmate witnesses for one hour each prior to trial to facilitate witness interviews. (*Id.*) Plaintiff states that such an order is necessary because Warden Gutierrez refused to grant her extra law library time to prepare for trial and indicated that she "won't be in Arizona period in a few weeks." (*Id.* at 1-2.) She further argues that an order is necessary "[g]iven the propensity of the staff at USP-Tucson to remove her from this district…to evade Plaintiff's participation at scheduled Court appearances." (*Id.* at 2.)

Defendant responded in opposition to an order prohibiting Plaintiff's transfer. (Doc. 101.) Defendant argues that Plaintiff fails to explain "why she would be pending redesignation on April 15, 2023, to prevent a court appearance this Court did not grant until April 21, 2023." (*Id.* at 3.) Defendant further argues that the Bureau of Prisons has authority to determine a prisoner's place of confinement and "may at any time…direct the transfer of a prisoner from one penal or correctional facility to another." (*Id.* at 4 (citing 18 U.S.C. § 3621(b)).)

"The Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011); *see* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). The Bureau may "direct the transfer of a prisoner from one

penal or correctional facility to another" at any time, and a designation of a place of imprisonment is "not reviewable by any court." 18 U.S.C. § 3621(b).

By Order dated September 1, 2023, this Court commanded the Warden of USP-Tucson to produce Plaintiff, who remains housed at USP-Tucson, "to appear at the United States Court" for each day of her trial. (Doc. 110.) Because the Bureau of Prisons may select the locations where prisoners serve their sentence," and because the Court does not anticipate Plaintiff's transfer at this late hour, the Court will deny Plaintiff's Motion for Order or TRO Until Trial (Doc. 94). *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011). However, the Court admonishes that Defendant will be responsible for the costs of returning Plaintiff to this district for trial if the Bureau of Prisons transfers Plaintiff.

**B.    Plaintiff's Motion for Reconsideration of Order in Part (Doc. 95)**

Plaintiff seeks reconsideration of the Court's April 21, 2023 Order. (Doc. 95.) Specifically, Plaintiff requests that the Court reconsider its determination that "the effect of solitary confinement and segregation on her mental health…is not directly relevant to any actions or omissions of Officer Vasquez and their effect on Plaintiff." (Doc. 95 at 1 (quoting Doc. 88 at 7-8).)

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).

After reviewing the Court's April 21, 2023 Order (Doc. 88) and Plaintiff's Motion (Doc. 95), the Court finds Plaintiff has not shown manifest error in this statement. The Court's April 21, 2023 Order dealt specifically with the issue of whether appointment of a neutral expert was appropriate. (Doc. 88 at 7-8.) The Court did not definitively determine that the effect of solitary confinement on Plaintiff's mental health was not relevant at all to the alleged actions or omissions of Officer Vasquez. As such, the Court will deny Plaintiff's Motion for Reconsideration of Order in Part (Doc. 95).

### C. Plaintiff's Renewed Motion to Appoint Counsel (Doc. 99)

Plaintiff filed a renewed Motion to Appoint Counsel, requesting counsel "due to the hardship she faces due to a homicide occurring at USP-Tucson on May 13, 2023, leading to a 60-day facility lockdown." (Doc. 99 at 1.) Plaintiff states that the lockdown prevented her from accessing the law library, phone, photocopier, legal files, and "anything needed to access the courts." (*Id.* at 2.)

In response, Defendant asserts that a prison lockdown is not sufficient on its own to establish that the appointment of counsel is appropriate. (Doc. 102 at 4.) Defendant further contends that Plaintiff does not address her likelihood of success on the merits or any purported inability to articulate her claims considering the complexity of the legal issues. (*Id.*) Finally, Defendant notes that Plaintiff has brought hundreds of lawsuits in federal district courts and, therefore, has less need for appointed counsel than the average *pro se* prisoner litigant. (*Id.* at 5.)

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982); *see also Hernandez v. Whiting*, 881 F.2d 768, 770 (9th Cir. 1989) (an incarcerated civil litigant has no constitutional entitlement to court-ordered counsel unless her case carries the risk of affecting her physical liberty). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate her claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

District Courts within the Ninth Circuit have found that lockdowns are not "exceptional circumstances" warranting the appointment of counsel. *Nasby v. Wickham*,

No. 3:22-CV-00146-MMD-CLB, 2023 WL 1768810, at *2 (D. Nev. Jan. 12, 2023) (denying plaintiff's motion for appointment of counsel where prison lockdowns limited access to law library, citing the lack of complexity in the case and plaintiff's "tremendous ability to articulate his claims to the Court"); *Polk v. Lattimore*, No. 1:12-cv-01156-DAD-BAM (PC), 2021 WL 2003000, at *3 (E.D. Cal. May 19, 2021) (denying plaintiff's motion to appoint counsel filed based on COVID-19 lockdowns and lack of access to law library, noting plaintiff may seek extensions of deadlines if access to the law library continued to be limited).

This Court denied Plaintiff's prior requests for counsel in this case, citing the lack of exceptional circumstances warranting appointment and Plaintiff's demonstrated ability to research, make legal arguments, and timely litigate issues as they arise. (*See* Docs. 66, 88.) The Court has also noted that the issues in this case are not complex, and that Plaintiff's presence in the SHU does not on its own justify the appointment of counsel. (Doc. 66 at 3, Doc. 88 at 10.) This reasoning remains applicable. Plaintiff has demonstrated an ability to articulate her claims before the Court, and any attempt to secure Plaintiff an attorney would be futile at this late hour. Accordingly, the Court will deny Plaintiff's Renewed Motion to Appoint Counsel (Doc. 99).

**D.     Plaintiff's Motion for Order Regarding Access to the Courts (Doc. 109)**

On August 4, 2023, Plaintiff filed a Motion for Order Regarding Access to the Courts. (Doc. 105.) Plaintiff seeks an order requiring the Federal Bureau of Prisons to: (1) "supply her 10 subpoena forms for witnesses due to the obligations of General Order 18-19;" (2) "cease allowing all of its SHU officers from unilaterally denying her access to a phone with sufficient time to locate the home addresses or places of incarceration of her 10 witnesses;" and (3) "fully accommodate [Plaintiff] in preparing for trial…and to order its staff to cease and desist in their interference tactics with her files, her mail, etc." (*Id.* at 7.) Plaintiff alleges that she "does not have access to subpoena forms to comply with General Order 18,19." (*Id.* at 5.) She further alleges that she has no way of locating the addresses of her witnesses to serve the witnesses subpoenas, except with the assistance of

her mother. (*Id.* at 5, 7.)

Defendant argues in response that the Court should deny Plaintiff's Motion, "which is in essence a preliminary injunction." (Doc. 106 at 1.) Defendant avers that Plaintiff failed to show that she is entitled to a preliminary injunction because (1) "Plaintiff has not established a likelihood of success or that serious questions go to the merits;" (2) Plaintiff did not discuss irreparable harm in her Motion; and (3) "Plaintiff failed to mention the equities and public policy, which favor upholding the Bureau's correctional decisions." (*Id.* at 6.) Defendant contends that, although Plaintiff identified the witnesses in question in the December 13, 2022 Joint Proposed Pre-Trial Order, Plaintiff "did not discuss witnesses or subpoena forms in any of the calls" with her mother since the June 3, 2023 pretrial conference. (*Id.*) Defendant further notes that "Plaintiff has not explained why she failed to request assistance in obtaining subpoena forms and witness address[es] in the eight months since the parties filed the Proposed Joint Pre-Trial Order." (*Id.*)

In reply, Plaintiff notes that this Court has denied Plaintiff's request for counsel on several occasions. (Doc. 108 at 2.) Plaintiff also avers that "every effort Plaintiff has made to secure her witnesses for this trial has been blocked," and "Plaintiff will be transported to the Courthouse for trial with no witnesses." (*Id.*)

"Indigent inmates have a constitutional right to meaningful access to the courts." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citing *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977)), *overruled on other grounds in Lacey*, 693 F.3d 896. However, there is "no established minimum requirement that a state must meet in order to provide indigent inmates with adequate access to the courts." *Id.* at 568. Further, the right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. Moreover, "prisoners do not have a right to any particular mean of access." *Aswegan v. Henry*, 981

F.2d 313, 314 (8th Cir. 1992). A court must determine whether the individual inmate before the court has been denied meaningful access. *King*, 814 F.2d at 568.

Pursuant to General Order 18-19:

> [A]ny self-represented litigant who wishes to serve a subpoena must file a motion with the Court for issuance of the subpoena. The motion must (1) be in writing, (2) attach a copy of the proposed subpoena, (3) set forth the name and address of the witness to be subpoenaed and the custodian and general nature of any documents requested, and (4) state with particularity the reasons for seeking the testimony and documents. The assigned judge shall determine whether the requested subpoena shall issue. Issuance of the subpoena shall not preclude any witness or person subpoenaed, or other interested party, from contesting the subpoena.

Gen. Order 18-19.

Plaintiff has had "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825. Furthermore, even if the Court were to construe Plaintiff's Motion as seeking issuance of subpoenas to compel her witnesses to testify, Plaintiff does not know the "address[es] of the witness[es] to be subpoenaed." Gen. Order 18-19. It is Plaintiff's responsibility to locate addresses at which trial witnesses can successfully be served with trial subpoenas. Neither the Court nor Defendant bear the responsibility to act as investigators on Plaintiff's behalf to locate witnesses that Plaintiff wishes to call at trial. It is also significant that Plaintiff waited until this late hour to express her concerns about the subpoena forms. Accordingly, Plaintiff's Motion for Order Regarding Access to the Courts (Doc. 105) is denied.

The Court will, however, invite Plaintiff to raise any issues regarding access to legal files and legal research at the beginning of trial.

### E.     Plaintiff's Motion to Take Judicial Notice (Doc. 109)

Plaintiff filed a Motion to Take Judicial Notice, in which she requests that the Court take judicial notice of the Ninth Circuit's opinion in *Tiedemann v. von Blanckensee*, 72 F.4th 1001 (9th Cir. 2023). A court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take

judicial notice of the fact of a court proceeding or filing as an undisputed matter of public record; however, a court may not take judicial notice of facts subject to reasonable dispute that are stated within court proceedings or filings. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). If "a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein" but only "for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (internal quotation marks omitted).

Although the Court may take judicial notice of the existence of the *Tiedemann* opinion, Plaintiff has not shown that doing so here is necessary or appropriate. Plaintiff's Motion to Take Judicial Notice (Doc. 109) will be denied.

**IV.  Defendant's Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law and Notice to Court Reporter (Doc. 113)**

Defendant filed a Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law and Notice to Court Reporter. (Doc. 113.) Defendant requests the deadline be extended from September 2, 2023, until September 5, 2023, due to counsel's intervening deadlines and short staffing in the United States Attorney's Office Civil Division. (*Id.*) Because Plaintiff is an unrepresented prisoner, Defendant does not present Plaintiff's position on the requested extension pursuant to LRCiv 7.3(b). The Court will grant Defendant's Motion (Doc. 113), *nunc pro tunc*.

**IT IS ORDERED**

(1)  Plaintiff's Motion in Limine and *Daubert* (Doc. 93) is **partially granted and partially denied**. The Motion is **granted** to the extent it seeks to exclude evidence of Plaintiff's prior lawsuits, but is otherwise **denied**.

(2)  Defendant's Motion in Limine No. 1: Lay Witness Testimony (Doc. 90) is **partially granted and partially denied**. The Motion is **granted** to the extent Defendant seeks to preclude Plaintiff from offering expert testimony under Rule 701, but is otherwise **denied**.

. . . .

(3) Defendant's Motion in Limine No. 2: Hearsay (Doc. 91) is **partially granted and partially denied**, as set forth above.

(4) Defendant's Motion in Limine No. 3: Relevance (Doc. 92) is **partially granted and partially denied**. The Motion is **granted** to the extent Defendant seeks to exclude testimony that Officer Vasquez told inmates to "kill" themselves. The Motion is **denied** in all other respects.

(5) Plaintiff's Motion for Order or TRO Until Trial (Doc. 94) is **denied without prejudice.**

(6) Plaintiff's Motion for Reconsideration of Order in Part (Doc. 95) is **denied**.

(7) Plaintiff's Renewed Motion to Appointment Counsel (Doc. 99) is **denied**.

(8) Plaintiff's Motion for Order Regarding Access to the Courts (Doc. 105) is **denied**.

(9) Plaintiff's Motion to Take Judicial Notice (Doc. 109) is **denied**.

(10) Defendant's Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law and Notice to Court Reporter (Doc. 113) is **granted,** *nunc pro tunc*.

Dated this 8th day of September, 2023.

_____
Honorable Rosemary Márquez
United States District Judge